Filed 7/31/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CONSUMER PROTECTION GROUP, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SIGNAL BRANDS, LLC, et al.,<br><br>    Defendants and Respondents. | B345531<br><br>(Los Angeles County<br>Super. Ct. No. 24STCV09608) |

    APPEAL from an order of the Superior Court of Los Angeles County, Christopher K. Lui, Judge. Affirmed.

    Blackstone Law, Jonathan M. Genish and Sage S. Stone for Plaintiff and Appellant.

    Jeffer Mangels Butler & Mitchell, Jeffer Mangels & Mitchell, Susan Allison and Matthew Kenefick for Defendants and Respondents.

_____

This is an appeal from an order dismissing an action after the trial court sustained a demurrer without leave to amend as to an amended complaint filed by plaintiff and appellant Consumer Protection Group, LLC (CPG) under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Prop. 65; Health & Saf. Code, § 25249.5, et seq.) against defendants and respondents Signal Brands, LLC; Ross Stores, Inc.; and Guess ?, Inc. (collectively, respondents).

CPG alleges Proposition 65 claims against respondents arising out of the failure to warn consumers they had been exposed to Diisononyl phthalate (DINP) in certain clutch and wallet products. The trial court sustained respondents' demurrer without leave to amend on two independent grounds: (1) the res judicata effect of the consent judgment entered in another Proposition 65 action initiated by a different private enforcer (CA Citizen Protection Group, LLC or CCPG) that included the clutch and wallet products at issue here; and (2) a defect in CPG's presuit Proposition 65 notices.

On appeal, CPG contends the trial court erred in applying res judicata because CPG is not in privity with CCPG. Specifically, according to CPG, because CCPG's presuit notice identified only a cosmetic bag and not the wallet and the clutch products at issue here, CCPG did not have authority to bind CPG to the settlement. CPG also contests the court's ruling that CPG's own Proposition 65 notices were defective.

The trial court correctly ruled CPG is in privity with CCPG. Common-law res judicata principles apply to Proposition 65 consent judgments. Applying those principles here, CPG is in privity with CCPG because they both purport to represent the public interest. CPG's contention that CCPG failed to identify

2

the wallet and the clutch products in CCPG's Proposition 65 notice is not a ground for avoiding the res judicata effect of the consent judgment. Because CPG fails to demonstrate the other elements of res judicata are not met or that it could amend the operative complaint to avoid the res judicata effect of the CCPG settlement, we affirm. We thus do not address whether CPG's own presuit notices were defective.

## PROCEDURAL BACKGROUND[1]

We summarize only those facts pertinent to our disposition of this appeal.

CPG avers that on June 7, 2022, it served a 60-day notice of violation on respondents Signal Brands, LLC and Guess ?, Inc., as well as the Attorney General and certain other public enforcement agencies, in which CPG alleged Proposition 65 violations arising from exposure to DINP in a Guess clutch. CPG further avers that on June 13, 2022, it served a 60-day notice of violation on respondent Signal Brands, LLC, respondent Ross Stores, Inc., the Attorney General, and other public enforcement agencies in which it alleged Proposition 65 violations arising from exposure to DINP in a Nine West wallet.

In September 2022, CCPG served respondents and certain public enforcement agencies, including the Attorney General,

---

[1] We derive our description of the procedural history in part from undisputed portions of the trial court's order sustaining respondents' demurrer to the operative complaint, the parties' admissions in their filings, and respondents' assertions that CPG does not dispute in its reply brief. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [employing this approach].)

3

with a 60-day notice under Proposition 65 for allegedly failing to warn individuals of exposure to DINP in Guess cosmetic bags. In March 2023, CCPG filed a complaint in Alameda County Superior Court against respondent Signal Brands, LLC and an entity named Signal Products, Inc., alleging violations of Proposition 65 for failure to warn consumers of potential exposure to DINP in Guess cosmetic bags " 'and other similar bags[.]' "

The parties to the Alameda action later settled and reported the terms of a proposed consent judgment to the Attorney General. The Attorney General suggested changes that respondents claim were incorporated into the amended proposed consent judgment.[2] CCPG then moved for approval of the amended consent judgment, and CCPG served the motion for approval and the documents supporting the motion on the Attorney General.

On April 16, 2024, CPG filed a complaint against respondents, alleging two causes of action under Proposition 65 for exposing consumers to DINP; one cause of action regarding the Guess clutch and the other, the Nine West wallet.

On May 14, 2024, the Alameda court, without objection from the Attorney General, approved and entered the amended consent judgment. The amended consent judgment applies to the following products, which it identifies as "Covered Products": "Guess ?, Inc. or 'Guess' branded cosmetic bags sold, manufactured, imported or distributed by either of the Defendants ('Cosmetic Bags'); [¶] . . . Guess ?, Inc. or 'Guess'

---

[2] Respondents do not identify the changes proposed by the Attorney General that they claim were made to the amended proposed consent judgment.

branded clutches sold, manufactured, imported or distributed by either of the Defendants ('Clutches'); and/or [¶] . . . Guess ?, Inc., 'Guess' or 'Nine West' branded wallets sold, manufactured, imported or distributed by either of the Defendants ('Wallets')."[3] The amended consent judgment released Proposition 65 claims against respondents for failure to provide warnings regarding exposure to DINP from the Covered Products.[4] The amended

[3] The amended consent judgment states that CCPG alleged in its 60-day notice and its complaint Proposition 65 violations arising out of exposure to DINP from the Covered Products. CPG argues the amended consent judgment thus "misrepresented to the [Alameda c]ourt that, in addition to the Cosmetic Bag, CCPG had served a statutory Proposition 65 60-day notice as to the Wallet and Clutch, and that CCPG's Complaint alleged violations regarding all three products."

[4] Although the amended consent judgment releases all three respondents from these Proposition 65 claims, the amended consent judgment indicates Signal Products, Inc. and respondent Signal Brands, LLC were the only named defendants in the Alameda action. The Alameda court's April 24, 2026 order denying CPG's motion to vacate the amended consent judgment likewise indicates Signal Products, Inc. and respondent Signal Brands, LLC were the only two named defendants in that action. (See Discussion, part A, *post* [taking judicial notice of the Alameda court's Apr. 24, 2026 order].)

CPG does not argue the fact CCPG had not named respondents Guess ?, Inc. and Ross Stores, Inc. as defendants in the Alameda action bars the latter entities from arguing the amended consent judgment precludes CPG's Proposition 65 claims against them. We thus do not address that issue sua sponte. (See Standards of Review & Res Judicata Principles, *post* [noting the appellant bears the burden of overcoming the presumption that the trial court's ruling is correct].)

consent judgment required the Covered Products to be reformulated or labeled with the detailed warnings specified in the judgment, and ordered the defendants to that action to pay $18,000 in civil penalties, $13,500 (i.e., 75 percent) payable to California's Office of Environmental Health Hazard Assessment (OEHHA) and $4,500 (i.e., 25 percent) payable to CCPG.

In September 2024, the trial court sustained respondents' demurrer to CPG's initial complaint based on the res judicata effect of the amended consent judgment in the Alameda action but granted CPG leave to amend.

On October 3, 2024, CPG filed its first amended complaint, asserting the two Proposition 65 causes of action alleged in its initial complaint. CPG attached several documents to its first amended complaint, including a letter, dated September 24, 2024, from the Attorney General to counsel for CCPG and respondents, respectively. In that letter, the Attorney General asserted the amended consent judgment "included products (a wallet and a clutch) that were beyond the scope of [CCPG's] original 60-day notice," claimed CCPG "lacked authority to act in the public interest as to [those] unnoticed products," "urge[d] the parties to amend the [amended c]onsent [j]udgment to limit its scope to the cosmetic bags," and opined that judgment "cannot bar another action brought by a Proposition 65 enforcer[ ] concerning" "unnoticed wallets and clutches . . . ."

On March 4, 2025, the trial court sustained respondents' demurrer to CPG's first amended complaint without leave to amend. The court agreed with respondents that CPG's "causes of action are barred by res judicata in that each [respondent] is covered . . . by the terms of the [a]mended [c]onsent [j]udgment."

6

As for CPG's argument CCPG did not identify the Guess clutch and Nine West wallet in CCPG's presuit notice, the court stated, "[E]ven an erroneous judgment has res judicata effect, and the defective notice [issue] should have been raised before the [amended] consent judgment was entered." The court added, "The fact that the Attorney General claims the [amended c]onsent [j]udgment is not valid [citation] is not dispositive, as the Attorney General cannot declare a judgment invalid and unenforceable — only a Court can do that."

The trial court also found CPG's "pre-lawsuit notice[s] in this action [were] defective because" they included the contact information for CPG's outside counsel rather than that of "the noticing individual or a responsible individual within the noticing entity as required by [California Code of Regulations, title 27,] § 25903[, subdivision ](b)(2)(A)(1)."

At the conclusion of its order sustaining the demurrer to the first amended complaint, the trial court observed: "[CPG] may file a new lawsuit if the [amended consent judgment] is amended in a way which would negate [the] res judicata effect upon the new lawsuit, and if [CPG] strictly complies with the pre-lawsuit notice requirements of [California Code of Regulations, title 27, §] 25903."

On March 14, 2025, the trial court dismissed the action with prejudice in accordance with its order sustaining respondents' demurrer to the first amended complaint without leave to amend. CPG timely appealed from the dismissal order.

**LEGAL BACKGROUND REGARDING PROPOSITION 65**

" ' "Proposition 65, which was passed as a ballot initiative in 1986, requires the state to develop and maintain a list of chemicals 'known to the state to cause cancer or reproductive

7

toxicity.' " ' [Citation.] It provides, with certain exceptions, that '[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.' [Citation.]" (*Consumer Advocacy Group v. Walmart Inc.* (2025) 112 Cal.App.5th 679, 687–688 (*Walmart Inc.*), quoting, inter alia, Health & Saf. Code, § 25249.6.)

Before a private individual may bring suit in the public interest to enforce Proposition 65,[5] Health and Safety Code section 25249.7, subdivision (d) requires that the private enforcer first provide notice to the alleged violator, the Attorney General, and certain public prosecutors, and that no prosecutor, including the Attorney General, has brought an enforcement action.[6]

---

[5] Proposition 65 suits are "qui tam actions" that "are brought on behalf of the state," which is "the real party in interest . . . ." (See *Walmart Inc.*, *supra*, 112 Cal.App.5th at pp. 691–693.) " 'An individual may sue under the Act only in the public interest; there is no provision for an individual to sue on [the individual's] own behalf. [Citation.]' [Citation.]" (*Id.* at p. 688.)

[6] "Actions [under Proposition 65] may be brought by a person in the public interest if both of the following requirements are met: [¶] (1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation . . . that is the subject of the private action to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator. . . . [¶] (2) Neither the Attorney General, a district attorney, a city attorney, nor a prosecutor has commenced and is diligently prosecuting an action

8

Regarding the contents of the presuit notice required for enforcement of Health and Safety Code section 25249.6's warning mandate (see Health & Saf. Code, § 25249.6), Proposition 65 requires the presuit notice to be accompanied by a "certificate of merit . . . stat[ing] that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action" (see Health & Saf. Code, § 25249.7, subd. (d)(1)).

A regulation that implements Proposition 65 requires presuit notices to include additional information.  (See 27 Cal. Code Regs., § 25903, subd. (b).)  For instance, a notice must include "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity."  (See *id.*, subd. (b)(2)(A)(1).)  Significant to this appeal, the regulation adds:  "[N]otices of violation of [s]ection 25249.6 of the [Health and Safety Code] involving consumer product exposures" shall include "the name of the consumer product or service, or the specific type of consumer product or services, that cause the violation, with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged."  (See 27 Cal. Code Regs., § 25903, subd. (b)(2)(D).)

---

against the violation."  (See Health & Saf. Code, § 25249.7, subd. (d).)

A private enforcer of Proposition 65 must give notice to the Attorney General of any settlement submitted for court approval and " 'the Attorney General may participate in court proceedings regarding approval.  [Citation.]'  [Citation.] . . . The Attorney General has standing to appeal a settlement even without intervening in the action."  (*Walmart Inc.*, *supra*, 112 Cal.App.5th at p. 688.)  If civil penalties are recovered in a Proposition 65 suit, 75 percent must be deposited in the Safe Drinking Water and Toxic Enforcement Fund, and 25 percent is paid to the plaintiff, regardless of "whether the plaintiff is a law enforcement agency or a person acting in the public interest."  (*Ibid.*)  Plaintiffs may also recover declaratory and injunctive relief.  (See *ibid.*)

## STANDARDS OF REVIEW AND RES JUDICATA PRINCIPLES

A general demurrer tests whether the plaintiff has stated facts sufficient to constitute a cause of action.  (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.)  We review a trial court's ruling on a demurrer de novo and treat as admitted all material, well-pleaded facts, but not contentions or conclusions of fact or law.  (*Id.* at pp. 1420–1421.)  We may also consider matters that are subject to judicial notice.  (*Id.* at p. 1421.)  A general demurrer may be sustained when the pleading discloses a defense or bar to recovery.  (*Ibid.*)

One such defense is res judicata.  (See *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218 (*Association of Irritated Residents*).)  "Three elements must exist for res judicata (or claim preclusion) to apply:  ' "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present

10

proceeding or parties in privity with them were parties to the prior proceeding." ' [Citation.]" (*Id.* at pp. 1218–1219.)

As for the first element, "A court-approved settlement acts as a final judgment on the merits for the purposes of res judicata." (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 694 (*ExxonMobil Corp.*).) Regarding the second element, "Two proceedings are on the same cause of action if they are based on the same 'primary right.' [Citations.] Under this theory, a cause of action is ' "comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] . . . . [Citation.]" ' . . . . [Citation.]" (*Association of Irritated Residents*, *supra*, 11 Cal.App.5th at p. 1228, fn. 24.)

"In the context of a res judicata determination, privity ' "refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' " ' [Citation.] ' "[T]he determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate. [Citation.] ' "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." ' " ' [Citation.] 'This requirement of identity of parties or privity is a requirement of due process of law.' [Citation.]" (*ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 689–690.)

11

We note that res judicata is intended to safeguard the parties' interest in the finality of a judgment.  (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 683.)  Thus, as a general rule, " ' "[a]n erroneous judgment is as conclusive as a correct one" ' " for the purpose of claim preclusion.  [Citation.]"  (See *id.* at p. 687.)

We review a trial court's decision not to grant leave to amend for abuse of discretion, specifically, we determine whether the appellant has satisfied its burden of showing a reasonable possibility of curing the defects in its pleading.  (*Black v. Los Angeles County Metropolitan Transportation Authority* (2025) 116 Cal.App.5th 677, 685.)

We presume a trial court's judgment or order to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.  (*County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 462–463 (*Niblett*).)  To rebut that presumption, appellant has the burden to show error with cogent argument supported by legal authority and citation to the record.  (*Id.* at p. 463.)  " 'The appellant bears this burden of rebutting the presumption of correctness accorded to the trial court's decision, regardless of the applicable standard of review.'  [Citation.]" (*Ibid.*)

**DISCUSSION**

CPG argues the trial court erred in sustaining respondents' demurrer based on (1) their res judicata defense, and (2) the failure to include in CPG's presuit Proposition 65 notices the contact information for the noticing individual or a responsible individual within the noticing entity as required by California Code of Regulations, title 27, section 25903, subdivision (b)(2)(A)(1).  CPG also challenges the court's denial of leave to amend.

12

As explained below, CPG does not show the trial court erred in concluding CPG's claims are barred by res judicata. (Discussion, parts B–C, *post*.)  CPG also fails to demonstrate there is a reasonable possibility CPG could amend its pleading to overcome respondents' res judicata defense.  (Discussion, part D, *post*.)  We thus do not address the court's other ground for sustaining the demurrer, that is, the adequacy of CPG's presuit notices.

We first turn to CPG's request for judicial notice.

## A.     We Grant CPG's Request for Judicial Notice of the Alameda Court's Denial of CPG's Motion To Vacate the Amended Consent Judgment But Deny the Remainder of CPG's Request

Shortly before CPG filed its opening brief, CPG moved for judicial notice of 19 trial court rulings (exhibits 1 to 19), two publications issued by OEHHA (exhibits 20 and 21), an analysis of Senate Bill No. 471 (exhibit 22), a copy of CPG's motion to vacate the amended consent judgment and of CPG's ex parte application to advance the hearing date on that motion (exhibits 23 and 24), and the motion to approve the amended consent judgment in the Alameda action (exhibit 25).

Concurrent with its reply, CPG requested judicial notice of two additional documents:  (1) the original proposed consent judgment in the Alameda action that was submitted to the Attorney General (exhibit 26), and (2) the Alameda court's April 24, 2026 order denying CPG's motion to vacate the amended consent judgment (exhibit 27).  Respondents did not file an opposition to this request for judicial notice.

We deny CPG's request for judicial notice as to exhibits 1 to 26 because those documents are not relevant to our disposition

of this appeal.  (See *Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at pp. 792–793, fn. 23 [noting that an appellate court may decline to take "judicial notice of 'materials . . . not relevant to [the appellate court's] determination of the issues on appeal' "].)

We grant CPG's unopposed request for judicial notice of the Alameda court order in exhibit 27.  (Evid. Code, §§ 452, subd. (d), 459.)  In that order, the Alameda court concluded, inter alia, that CPG did not show a nonparty could move to vacate the amended consent judgment.  The Alameda court "l[eft] unresolved the issue of the legal effect of the [amended c]onsent [j]udgment concerning the clutch bags and wallets that . . . were not included within [CCPG's] 60-day notice," and "l[eft] the door open for the Attorney General — who *is* a party [to the] litigation — to attempt to void the . . . Judgment."  CPG does not claim the Attorney General thereafter moved to amend or vacate the amended consent judgment.

## B.  CPG Is In Privity with CCPG

CPG's principal argument is that CCPG lacked authority to represent the public interest as to the Guess clutch and Nine West wallet in the Alameda action because CCPG did not identify those products in its presuit Proposition 65 notice.  CPG thus maintains it is not in privity with CCPG.

*ExxonMobil Corp.* holds that defects in a private enforcer's presuit Proposition 65 notice have no bearing on whether that private enforcer's settlement with a defendant has res judicata effect.  (See Discussion, part B.1, *post*.)  We also reject CPG's reliance on *LaCour v. Marshalls of California, LLC* (2023) 94 Cal.App.5th 1172 — a case involving the res judicata effect of a settlement of claims brought under the Labor Code Private

14

Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) — to argue otherwise. (Discussion, part B.2, *post*.) We do so because CPG has not shown the electorate or the Legislature intended to allow a private enforcer to invoke Proposition 65's notice requirements as a basis for attacking collaterally the scope of a settlement of another private enforcer's Proposition 65 action. (See *ibid.*)[7]

### 1. *Under* ExxonMobil Corp., *CPG is in privity with CCPG*

Our colleagues in Division Four held Proposition 65's legislative history demonstrates, "[C]laim preclusion applies to private enforcement actions [under that statute], as long as due process and the traditional elements of res judicata are satisfied."

---

[7] CPG also argues, "*Walmart*[, *supra*, 112 Cal.App.5th 679,] confirms that Proposition 65's notice requirement — like PAGA's [Labor and Workforce Development Agency] notice requirement — defines the scope of a private enforcer's delegated authority to act on the state's behalf. This shared representative structure reinforces why deficiencies in a prior plaintiff's statutory authorization *prevent that plaintiff from binding later enforcers through preclusion principles*." (Italics added.) Insofar as CPG is arguing *Walmart* holds that defects in a Proposition 65 presuit notice nullify the claim preclusive effect of a settlement of the ensuing action, CPG does not direct us to any portion of *Walmart* supporting such an expansive interpretation of the decision. Because CPG fails to show the *Walmart* decision has any bearing on our privity analysis, we decline to address that issue further. (See *Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 953–954 [" ' "Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief." ' "].)

(See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 684–685.) There, the reviewing court concluded the appellant-private plaintiff who sued a defendant under Proposition 65 was in privity with another private plaintiff who had settled a Proposition 65 action against that defendant. (See *id.* at pp. 680–681, 689, 693.) As explained below, *ExxonMobil Corp.* supports the trial court's finding that CPG and CCPG are in privity.

In *ExxonMobil Corp.*, an entity named Communities for a Better Environment (CBE) sued ExxonMobil Corporation under Proposition 65 for allegedly knowingly and intentionally allowing benzene and toluene to leak into drinking water sources. (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 680–681.)[8] CBE and ExxonMobil later agreed to a proposed settlement intended to cover all sites in California in which water or soil was allegedly contaminated by benzene or toluene. (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 681, 688.) The Attorney General reviewed the terms of the proposed settlement, and the trial court presiding over CBE's action entered a judgment approving it. (See *id.* at pp. 681, 684, 694.)

Prior to entry of judgment in CBE's action against ExxonMobil, Consumer Advocacy Group (CAG) sued ExxonMobil under Proposition 65 for knowingly and intentionally allowing

---

[8] In addition to its proscribing knowingly and intentionally exposing individuals to certain chemicals without a proper warning (see Legal Background Regarding Proposition 65, *ante*), Proposition 65 provides, with certain exceptions, "No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water . . . ." (see Health & Saf. Code, § 25249.5).

16

benzene, toluene, *and lead* to leak into drinking water sources. (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 680–681.) After judgment was entered in CBE's action, the trial court in CAG's action entered summary judgment in favor of ExxonMobil on the ground the court-approved settlement in CBE's action barred CAG's suit under the doctrine of res judicata. (See *id.* at pp. 680–681.)

On appeal, the *ExxonMobil Corp.* court ruled "the trial court erred in granting full summary judgment based on res judicata" "[b]ecause the issues in [CAG's] action are not identical to those resolved in the prior action." (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 680.) The Court of Appeal reasoned, "ExxonMobil is not entitled to full summary judgment or to summary adjudication that CAG's entire action is barred by res judicata . . . because the CBE action did not resolve claims relating to lead." (See *id.* at p. 689.) Because ExxonMobil's res judicata defense could have affected the course of further trial court proceedings upon remand, the appellate court addressed whether the other elements of res judicata were satisfied, including whether CAG was in privity with CBE. (See *id.* at pp. 685–686, 689.)[9]

The *ExxonMobil Corp.* court "conclude[d] that CAG [was] in privity with CBE for the purposes of res judicata" "due to [the] 'adequate representation' of CAG's interests by CBE." (See

---

[9] The reviewing court also found "the settlement between CBE and ExxonMobil [was] . . . a final judgment on the merits" because " ' " '[a] judgment entered . . . by consent or stipulation[ ] is as conclusive a . . . bar as a judgment rendered after trial.' [Citation]" ' [Citation.]" (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 694.)

17

*ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 692–693.)  The reviewing court explained, CBE "sue[d] on behalf of . . . the public" by invoking "the citizen enforcement provision of Proposition 65." (*ExxonMobil Corp.*, at p. 692.)  The appellate court further reasoned, "[T]he settlement agreement's failure to mention the public as a party to be bound is not sufficient to show that CBE abandoned its intention to represent the interests of the general public," and "the settlement agreement itself involved remedial measures to be taken by ExxonMobil at alleged violation sites, not payments of penalties to CBE."  (See *id.* at p. 692.)[10]  Because CAG alleged in its complaint that it had likewise " 'br[ought] this action in the public interest[,]' " the appellate court found "CBE adequately represented CAG's interests."  (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 692–693.)

Although the appellate court noted there was a "factual dispute over whether CAG had notice" "of the impending settlement between ExxonMobil and CBE," the court found

---

[10]  The amended consent judgment in the CCPG action obligated the defendants to pay a civil penalty of $18,000, $4,500 of which was payable to CCPG.  (Procedural Background, *ante*.)  This distinction between the amended consent judgment and CBE's settlement is immaterial, given the *ExxonMobil Corp.* court's observations that "[a]n individual may sue under [Proposition 65] only in the public interest," and "private enforcers['] . . . entitle[ment] to 25 percent of all penalties" is not "an individual property right . . . ."  (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 692–693.)  We further note CPG does not argue CCPG's entitlement to civil penalties under the amended consent judgment has any bearing on our privity analysis.

18

CBE's "adequate representation of CAG's interests" had "cured any lack of notice." (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 693.) The court further noted that "[a]n individual must provide the Attorney General any settlement agreement being submitted for court approval, and the Attorney General may participate in court proceedings regarding approval." (See *id.* at pp. 692–693.)[11]

Here, the trial court cited CCPG's complaint and CPG's first amended complaint for the proposition that "both Plaintiffs brought the[ir respective] action[s] as private attorneys general pursuant to Health [and] Safety Code [section] 25249.7[, subdivision] (d), on behalf of the public interest." Because "the general public was represented by private attorneys general in both actions," the court ruled that CPG is in privity with CCPG. Applying *ExxonMobil Corp.* here, we agree.

CPG argues *ExxonMobil Corp.* is inapposite because in that case, "the first enforcer indisputably" "serv[ed] . . . a valid 60-day notice identifying the products and exposures alleged," "thereby acquiring authority under Health and Safety Code section 25249.7, subdivision (d), to act in the public interest as to the very violations later asserted by the subsequent plaintiff." CPG maintains, "It was this valid statutory authorization, not any general similarity of products or chemical exposures, that

---

[11] Given the state is the real party in interest in Proposition 65 actions (see Legal Background Regarding Proposition 65, *ante*), these procedural safeguards afforded to the Attorney General prior to settlement approval further support *ExxonMobil Corp.*'s finding that "application of the privity doctrine to preclude CAG's claim" did not offend due process (see *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 693).

19

formed the basis for the privity analysis in that case." CPG concludes, "As CCPG lacked such [valid statutory] authority here, given that CCPG did not notice the wallet and the clutch, *ExxonMobil* provides no support for the trial court's ruling."

CPG's assertion there was no dispute that CBE had served a valid presuit notice is belied by the *ExxonMobil Corp.* opinion. The Court of Appeal observed, "CAG also argues that the settlement is invalid as to the overlapping sites [i.e., the contamination sites covered by both CBE's settlement and CAG's complaint] because CBE's intent to sue notices for those sites did not comply with the requirements of Proposition 65. The notice requirements under Proposition 65 are intended to give notice to potential defendants, as well as giving public prosecutors such as the Attorney General the opportunity to file suit themselves. ([Health & Saf. Code,] § 25249.7, subd. (d)(1).) CAG is neither a defendant nor a public prosecutor and is not entitled to notice under this provision. Thus, even if the Proposition 65 notice requirements were violated, a question on which we express no opinion, CAG has not shown that it has standing to complain of the violation. These questions should have been raised before the judgment in the CBE action became final; we decline to address them on collateral review." (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at p. 687, fn. 4; see also *id.* at pp. 681–682 [defining the "overlapping sites" and noting they were covered by CBE's settlement].)

The passage from footnote 4 of the *ExxonMobil Corp.* decision in the above paragraph reveals that although CAG had argued CBE's presuit notice was defective, the Court of Appeal treated this alleged defect as one only ExxonMobil or the public prosecutor could raise. (See *ExxonMobil Corp.*, *supra*,

20

168 Cal.App.4th at p. 687, fn. 4.)  Further, even though the *ExxonMobil Corp.* court assumed arguendo that CBE served a defective presuit notice (see *ibid.*), the reviewing court still found privity "due to 'adequate representation' of CAG's interests by CBE" (see *id.* at pp. 692–693).  Accordingly, we reject CPG's claim that *ExxonMobil Corp.*'s finding of privity was predicated on CBE's compliance with Proposition 65's presuit notice requirements.

In sum, the *ExxonMobil Corp.* decision supports the trial court's finding CPG is in privity with CCPG.  We next address CPG's argument that *LaCour* compels a contrary conclusion.

### 2.    *CPG's reliance on* LaCour *is unavailing*

CPG argues *LaCour* "establishes a mandatory analytical sequence for any claim preclusion analysis involving a representative enforcement scheme:  a court must begin by determining whether the first plaintiff lawfully acquired statutory authority to pursue the alleged violations.  Only if statutory authority existed may a court then evaluate whether the plaintiff adequately represented the public interest; and only if adequate representation is established may privity — and therefore claim preclusion — arise."  Although the *LaCour* decision addressed whether the settlement of a PAGA suit had claim preclusive effect on a subsequent PAGA action (see *LaCour*, 94 Cal.App.5th at pp. 1181–1183), CPG maintains *LaCour* applies to this case because "Proposition 65 [is] 'not meaningfully distinguishable from comparable qui tam statutes,' " including PAGA.

In essence, CPG seeks to import *LaCour*'s privity analysis from the PAGA context into a different legal setting (i.e., a Proposition 65 suit) and reverse the trial court's finding of privity

21

using *LaCour*'s approach. As we have explained, *ExxonMobil Corp.* establishes that CCPG is CPG's privity for the purposes of res judicata. (Discussion, part B.1, *ante*.) Thus, CPG is asking us to follow *LaCour* in derogation of *ExxonMobil Corp.* We decline to do so because, as we explain below, CPG has not persuaded us to reject *ExxonMobil Corp.*'s holding. (See *The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529 [noting that " 'we ordinarily follow' " another Court of Appeal's decision unless we have " 'good reason to disagree' " with it].)

In *LaCour*, an employee of the defendant served on the Labor and Workforce Development Agency (LWDA) a notice under PAGA alleging Labor Code violations for off-the-clock work relating to time employees spent undergoing an antitheft bag check procedure at the end of their shifts. (See *LaCour*, *supra*, 94 Cal.App.5th at pp. 1181–1182 & fn. 1, 1193 [describing plaintiff Joan Paulino's notice to the LWDA].) That employee filed a PAGA complaint against the defendant that "focus[ed] narrowly on compensation for [the aforementioned] off-the-clock work," and a federal district court later approved the parties' settlement and entered a consent judgment dismissing the action with prejudice. (See *id.* at pp. 1181–1182 & fn. 1, 1192.)

Subsequently, the plaintiff in *LaCour*, who was a former loss prevention specialist at one of the defendant's stores, served a PAGA notice on the LWDA, which the plaintiff claimed had raised "Labor Code violations not encompassed in [the other employee's] notice," including the "failure to reimburse uniform maintenance and other expenses . . . ." (See *LaCour*, *supra*, 94 Cal.App.5th at pp. 1181–1182 [indicating the first PAGA action was settled on July 31, 2020]; *id.* at p. 1185 [indicating the

22

plaintiff in *LaCour* served LWDA with his PAGA notice in Nov. 2020].)  After the *LaCour* plaintiff filed his PAGA action in state court, the defendant moved to strike all Labor Code violations predating November 17, 2020, arguing these violations were released by the settlement of the prior PAGA action.  (See *id.* at pp. 1181–1182.)  The trial court granted the motion and struck all allegations of Labor Code violations predating November 17, 2020 as barred by res judicata.  (See *id.* at pp. 1182–1183.)  The court ultimately granted judgment on the pleadings for the defendant based on the plaintiff's lack of standing to litigate violations occurring after his employment ended in November 2019.  (See *id.* at p. 1183.)  On appeal from the ensuing judgment, the *LaCour* plaintiff contested the court's ruling on the motion to strike.  (See *id.* at pp. 1183, 1189.)

The *LaCour* court concluded, "[T]he trial court erred in giving claim preclusive effect to the [prior] judgment," and thus reversed the judgment entered in the case before it, along with the order granting the defendant's motion to strike.  (See *LaCour*, *supra*, 94 Cal.App.5th at pp. 1189, 1197.)  In support of this conclusion, the *LaCour* court ruled neither the "identity of claims" nor the "privity" requirements of res judicata had been satisfied.  (See *id.* at pp. 1192, 1196, italics & some capitalization omitted.)

According to the *LaCour* court, because the operative complaint in the first PAGA action concerned only off-the-clock work during bag checks, the identity of claims inquiry turned on whether that PAGA plaintiff " 'could have' " raised the Labor Code violations pursued by the second PAGA plaintiff.  (See *LaCour*, *supra*, 94 Cal.App.5th at p. 1191.)  As to that issue, the *LaCour* court held, "[F]or a PAGA plaintiff to obtain

23

authorization to sue as a proxy for the state, she must provide notice to the LWDA of at least minimal 'facts and theories' to support a proposed PAGA claim," thereby satisfying "[t]he [statutory] requirement of presuit administrative exhaustion of PAGA claims . . . ."  (See *id.* at p. 1193.)  The Court of Appeal stated, "[Because] no release is effective without party authority to effectuate it[,] . . . . the underlying issue of LWDA authorization-to-sue is inextricably bound up with the identity of claims analysis here."  (See *id.* at p. 1194.)  Applying those principles to the case before it, the *LaCour* court held the first PAGA plaintiff was not "authorized to pursue" "a variety of claims" that she had settled but "for which she provided no factual basis to the LWDA" in her notice.  (See *id.* at p. 1195.)[12] The appellate court reasoned that the first PAGA plaintiff's "LWDA notice letter identified nothing more than failure to compensate employees for off-the-clock work at the end of shifts," whereas the *LaCour* plaintiff raised a "raft of additional wage-and-hour violations . . . ."  (See *LaCour*, *supra*, 94 Cal.App.5th at pp. 1192–1193.)

Next, *LaCour* stated that to find privity, the court "must be able to say *both* that another party acted as the nonparty's virtual representative in the first action *and* that the circumstances put the nonparty on notice he may be bound by the result there."  (See *LaCour*, *supra*, 94 Cal.App.5th at p. 1196.) The reviewing court also stated its "privity analysis turn[ed] on

---

**12**  The *LaCour* opinion does not reproduce the text of the release included in the settlement of the first PAGA action.  (See, e.g., *LaCour*, *supra*, 94 Cal.App.5th at p. 1193 [instead faulting the trial court for "focus[ing] on what was released" in the first action].)

24

the same issue that d[rove the court']s analysis of the identity of claims element of res judicata." (*Ibid.*) Specifically, as for the virtual representative requirement, *LaCour* concluded the first PAGA plaintiff and the *LaCour* plaintiff did not "share[ ] an 'identity or community of interest' " "[b]ecause [the first PAGA plaintiff] was not authorized to pursue and settle claims . . . encompassing allegations beyond the 'facts and theories' specified in her narrow presuit LWDA notice . . . ." (See *id.* at pp. 1196–1197.) The Court of Appeal then concluded the first PAGA plaintiff's notice to the LWDA did not afford the plaintiff in *LaCour* with "reasonable notice he may be bound as a nonparty privy" for Labor Code violations other than those arising from the "failure to pay employees for off-the-clock work at the end of shifts." (See *ibid.*)

Assuming arguendo *LaCour* was correctly decided, CPG has not shown *LaCour* warrants a departure — in the Proposition 65 context — from the res judicata principles discussed in *ExxonMobil Corp.* CPG argues that CCPG's "lack of statutory authority eliminates privity as a matter of law." (Underscoring & some capitalization omitted.) To support this assertion, CPG must, but has failed to, direct us to evidence that in enacting or amending Proposition 65, the electorate or the Legislature intended to " ' " ' " 'depart from, alter, or abrogate' " ' " ' " the common-law elements of res judicata. (See *Fireside Bank Cases* (2010) 187 Cal.App.4th 1120, 1129; see also 1 Cal. Affirmative Def. (2d ed. 2025) § 14:1 ["Res judicata is a matter of state common law subject to modification by the Legislature . . . ."].) In fact, the statutory provision CPG cites to support its position that CCPG lacked authority to raise claims concerning the wallet and the clutch is silent on whether a

25

deficient presuit notice deprives a settlement of its claim preclusive effect.  (See Health & Saf. Code, § 25249.7, subd. (d); see also fn. 6 & accompanying text [describing this statutory provision].)  Thus, regardless of whether noncompliance with a presuit notice requirement would be a proper ground to attack collaterally the scope of a PAGA settlement, we have no basis to conclude that the same is true in the Proposition 65 setting.

In sum, CPG has not persuaded us that *ExxonMobil Corp.* was wrongly decided and that *LaCour*'s privity framework applies here.  The trial court thus did not err in ruling that CPG is in privity with CCPG.

## C.    CPG Fails To Show the Trial Court Erred In Concluding the Remaining Elements of Res Judicata Are Satisfied

As we explained in our Standards of Review and Res Judicata Principles, *ante*, res judicata requires not only that the person against whom the defense is being asserted was a party or in privity with a party to the prior proceeding, but also that (1) the judgment in the prior proceeding was final and on the merits and (2) the causes of action in both proceedings are the same.  The trial court found all three elements are satisfied.  As explained in our Discussion, part B, *ante*, we agree with the trial court that CPG and CCPG are in privity.

CPG does not challenge the trial court's finding the amended consent judgment was final and on the merits for the purpose of res judicata.  Accordingly, CPG fails to rebut the presumption the court correctly found the amended consent judgment satisfies that element of claim preclusion.  (See Standards of Review & Res Judicata Principles, *ante*.)

26

Next, CPG relies upon *LaCour* for the proposition that because CCPG did not serve a presuit notice identifying the Guess clutch and Nine West wallet, CCPG lacked authority to settle those claims, meaning "the essential element[ ] of . . . identity of claims . . . [is] absent." As we explained in our Discussion, part B.2, *ante*, *LaCour*'s res judicata analysis is inapposite here.

CPG also does not argue cogently that under the primary rights theory, the amended consent judgment did not resolve the causes of action CPG raises here. (See Standards of Review & Res Judicata Principles, *ante* [noting that courts employ the primary rights theory to determine whether the same cause of action requirement is met].) Instead, CPG argues, in passing, the "trial court incorrectly concluded that 'the present proceeding is on the same cause of action as the prior proceeding' " because "CCPG's Complaint alleged a cause of action based solely on the Guess Cosmetic Bag." Yet, the amended consent judgment, by its terms, expressly applies to claims involving Guess clutches and Nine West wallets, and our colleagues in *LaCour* acknowledged that "any plaintiff can agree to a settlement release that is broader than the claims [the plaintiff] pleaded or could have pleaded." (See *LaCour*, *supra*, 94 Cal.App.5th at p. 1194.) By failing to develop further its contention that the omission of these two products from CCPG's complaint is fatal to respondents' res judicata defense, CPG forfeits that contention. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 [deeming a contention forfeited because the appellant failed to support it with cogent argument and citations to the record and legal authority].)

27

In addition, CPG argues for the first time in its reply that the amended consent judgment "is not merely erroneous, it is void" as to the wallet and the clutch because CCPG did not identify those products in its presuit notice. By belatedly raising this contention, CPG forfeited it. (See *Niblett*, *supra*, 116 Cal.App.5th at pp. 477–478 [holding that an appellant forfeited a point by "asserting [it] for the first time in his reply"].)

Lastly, " 'Even if the[ ] threshold requirements [for res judicata] are established, [the doctrine] will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed." ' [Citation.]" (See *ExxonMobil Corp.*, *supra*, 168 Cal.App.4th at pp. 685–686; see also *id.* at p. 694 ["Our Supreme Court has cautioned that '[t]he public interest exception is an extremely narrow one . . . . [I]t is the exception, not the rule, and is only to be applied in exceptional circumstances.' "].) CPG does not argue that this exception to claim preclusion applies here. We further note that CPG does not contest the fairness of the amended consent judgment. For instance, absent from CPG's briefing is any claim that the civil penalties provided in the amended consent judgment were too low or that the injunctive relief provided thereunder was too narrow. Therefore, it is not apparent to us that applying res judicata here would result in an injustice or contravene the public interest.

In sum, CPG fails to demonstrate the trial court erred in sustaining respondents' demurrer based on their res judicata defense.

**D.    CPG Does Not Demonstrate the Trial Court Abused Its Discretion In Denying Leave To Amend**

Although CPG's challenge to the trial court's ruling denying leave to amend is not altogether clear, CPG seems to argue there would have been a reasonable possibility CPG could have amended its pleading to state Proposition 65 claims not barred by res judicata if the court had granted CPG's oral request to stay the proceedings to allow CPG to move to vacate the amended consent judgment.[13]  Thus, CPG appears to treat its oral request for a stay and entitlement to leave to amend as inextricably intertwined.

We assume arguendo CPG is correct that the validity of the trial court's order denying leave to amend hinges on whether the court erred in denying CPG's request to stay the action.  Even with the benefit of that assumption, CPG fails to demonstrate the court abused its discretion in denying leave to amend.

" '[A] court ordinarily has inherent power, in its discretion, to stay proceedings when such a stay will accommodate the ends of justice.' [Citation.]" (*St. Paul Fire & Marine Ins. Co. v. AmerisourceBergen Corp.* (2022) 80 Cal.App.5th 1, 6–7.)  " ' "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket

---

[13]  CPG also argues the trial court erred in denying counsel's request to stay the proceedings to await a decision from the Court of Appeal in case No. B336080 addressing whether the inclusion of outside counsel's contact information in a Proposition 65 presuit notice complies with California Code of Regulations, title 27, section 25903, subdivision (b)(2)(A)(1).  We do not address this contention because we affirm the trial court's ruling that CPG's action is barred by res judicata.

with economy of time and effort for itself, for counsel, and for litigants." ' [Citations.]" (See *id.* at pp. 13–14.) An abuse of discretion occurs if the trial court's decision " ' " 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' [Citation.]" (See *Roth v. Plikaytis* (2017) 15 Cal.App.5th 283, 290.)

At the hearing on the demurrer to the operative pleading, the trial court was concerned that granting CPG's oral request could result in the case being stayed "indefinitely in the hope or expectation" the Alameda court modifies or sets aside the amended consent judgment. As it turned out, CPG did not even file its motion to vacate the amended consent judgment until more than seven months after the demurrer hearing. We conclude the court did not act outside the bounds of reason in finding that a stay of indefinite duration would not serve the interests of judicial economy.

Accordingly, we reject CPG's contention the trial court erred in denying CPG's request to stay the action. CPG does not show that even if it were not entitled to the stay it requested, there exists a reasonable possibility CPG can amend its pleading to overcome respondents' res judicata defense. CPG thus fails to discharge its burden of showing the court erred in denying leave to amend. (See Standards of Review & Res Judicata Principles, *ante* [noting that CPG has the burden of showing an amendment could cure the defect in its pleading].)

30

## DISPOSITION

We grant plaintiff and appellant Consumer Protection Group, LLC's (CPG's) request for judicial notice of exhibit 27, and we deny CPG's request for judicial notice of exhibits 1 to 26. We affirm the trial court's order dismissing this action with prejudice. Defendants and respondents Signal Brands, LLC; Ross Stores, Inc.; and Guess ?, Inc. are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.